Good morning, Your Honors. May it please the Court, Angela Daubes for the defendant and appellant, Brian Wright. I would like to reserve two minutes for rebuttal. Your Honors, the crux of this case is the government utilizing modern technology and then having that technology essentially create the violations against Mr. Wright. And I wanted to start with the tracking of the cell phone and carpenter, unless there was a different area. Create the violations or discover the violations? Discovering is probably a better way of describing it, but Mr. Wright is no angel, and I think he would agree with that. But certainly, that's what created the or discovered the violations in this case. Is a predicate to this whole argument whether or not this exclusionary rule applies in the revocation context? Yes, Your Honor. So it seems to me that that's a predicate rule we ought to discuss before we then  Yes, Your Honor. So I'm arguing, and this is a limited case where this applies, where it is an egregious violation of the Fourth Amendment in this case, Your Honor. And I can speak to that specifically. That's the short answer. And so that would be applying for the first time really what we've applied in the immigration context and importing that into revocation? Or do we have a case on revocation where we've also seen the application of the egregious situation doctrine? Yes, Your Honor. The case is Lara, and Judge Fletcher, I'm sure, is familiar with that case. And the analysis in that case is really important. First, Mr. Wright did not consent to having his cell phone searched. And even if there was some sort of waiver not applicable in this case, the search itself was unreasonable. We look at, you know, the individual's privacy concern, which is great with a cell phone, versus the government's interest, which is less than the privacy interest in a cell phone. And there's three privacy factors. I can go through each of those. The first is Mr. Wright's status. He is a supervised releasee. Certainly, his privacy interest is lesser because of his status, but it doesn't go away altogether. We know that from Riley. There's a limited expectation, but that should not be substituted for no expectation. And in Lara, the government interest was And it's similar to Lara. So, Lara, you had someone that missed an appointment with probation. And here, you have an officer that essentially suspects Mr. Wright of something, but without any specific activity. Second, the clarity of the conditions of probation. We don't have any clear and unambiguous terms to point to. Like Lara, the words were container or property, not equaling a cell phone, and the data contained within that cell phone specifically. Here, the provision is a warrantless search of a person, property, residence, place of business, and vehicle. Specific, somewhat limiting terms that do not include a cell phone. And we also have a search conducted by an FBI agent and not a probation officer. So, not matching the language of that search term. And really, the nature of the contents of a cell phone. It is large. It's a mini-computer. There's all sorts of data on a cell phone. And I just wanted to speak to the good faith exception on this. Yes. So, the appellate precedent in this case really was, at best, unclear. Like Lara, as of early 2017, you have, for example, the Knotts case from 1983 about the beeper being a specific journey, taking it forward to Kelo, the thermal imaging case, the use of technology, even in 2012. But we don't have anything. A carpenter is decided 18 months later. Is that correct? Correct, Your Honor. So, I mean, it's hard. You can add a few cases up, but in terms of the good faith exception, it seems hard to impose that when the whole issue of the cell phone search and the scope of the search really didn't have clarity or some clarity until carpenter. So, how do you overcome the temporal situation? Yes, Your Honor. So, looking as of early 2017 or late 2016, what was the state of the law? Certainly, Lara was in effect, and we have Jones, the GPS tracking case, coupled with the Riley case, the search of a cell phone incident to arrest. So, taking all those things, it should have given an indication that this needed a warrant, taking those cases together, even apart from carpenter not being decided at the time. I wanted to move on to a different area unless there was more questions. So, the due process concerns of Mr. Wright being involved in prostitution, having a fair warning of what his activities, what he was not allowed to do and what he was allowed to do. For example, having his phone number associated with internet ads, there wasn't an internet prohibition, and he needed notice when the acts in and of themselves are not criminal. But I don't think he got his comeuppance because of use of his phone number. He got his comeuppance because he was basically acting as a pimp. Yes, Your Honor. So, you're speaking to the standard in this hearing, right? Yes. And I'm not saying that the court has not made a decision on the basis of the evidence, circumstantial evidence put together to, as the judge found, find this against Mr. Wright. Right. So, if we're looking at the results — I want to make clear that we're not dealing with a prohibition of using his cell phone number. The issue is what was he using it for. Correct. And if we look at the results, that's what the results are. And certainly, I'd like to shift the time period to how this information was obtained, right? I mean, the results-based approach is difficult for my client. And we're also talking about the lack of notice in association with his girlfriend. Really, the key word I'm looking at with that is the word engaged, whether she was engaged. So, what does engaged mean? Is it past tense? Is it because she was arrested? It's not the word engaging, talking about current behavior. It's an ambiguous term, and it sounds very technical, but it's important when we're trying to figure out what Mr. Wright can and cannot do. The reporting change of residence, quickly, again, we have a standard to figure out what residence means. Is it how many days, how many pings were at the location of his reported residence versus not? Is it some other standard where his toothbrush or clothing is? There's just not a clear standard by which the probation officer can figure out what to do with it, and also Mr. Wright can figure out how to govern himself. Just briefly on the denial of standby counsel, it's not that he wanted counsel to represent him, but it became a concern. Where is the right for standby counsel? You have a right to counsel, and you have a right to represent yourself. Where is the right to represent yourself and have counsel? Your Honor, it is a discretion of the court. I admit and agree to that. It just became a concern when he, during the hearing, was having difficulty with certain things so that he would have been assisted with the use of standby counsel. That could be we see, unfortunately, we see lawyers who are well qualified and have difficulty with things. So that doesn't give them a right to additional standby counsel to make sure that everybody gets propped up. Yes, Your Honor. And I agree and admit that it is a discretionary standard and not my best issue before the Court today, but I do want to raise that because it is a constitutional concern. Would you address the return of property? Sure, Your Honor. So there was a motion filed, testimony at a hearing, and he was presumed to have a right to return to the property, and it should have been returned. The case was over, he had pled guilty, and the case should have been resolved in his favor. I see I have around two minutes remaining, but I don't want to reserve that. You may reserve that. Okay. Thank you, Your Honor. Good morning. May it please the Court. Peter Levitt for the United States. The government's use of modern technology is perfectly legitimate in this case, and largely irrelevant to the ultimate disposition. The government, Agent McPeak, after consulting with Probation Officer Mummey, obtained the trap and trace information, and this went to one of the many supervised release violations and a comparatively minor one at that, the residency requirement. The plain gist of the district court's imposition of a 21-month sentence, as set forth in excerpts of Record 43 to 46, is the new crimes violation, the pandering and the living off the income of a prostitute, and the violation of the association condition, the associating with known criminals when he went down to jail and on a monitored call spoke to her and basically, this is a pimp talking to his prostitute, apologizing for not screening out the clients better. So the technology at issue, the trap and trace, went to was he staying at his listed smoke ranch address, or, as turned out to be the case, was he shacked up with one of his prostitutes at the West Arby address. That's the only thing the trap and trace and the location information went to. And it's largely duplicative of what Officer never finding the defendant there. So I believe that issue falls by the wayside. With regard to Carpenter, Smith and Miller carve out a third-party exception that's been applied by all circuit courts in the wake of Carpenter, which was decided in June of 2018. And this is, in other words, information where, pursuant to 2703D, a third party the information is obtained from a third party, the carrier. And courts have applied Smith and Miller, the third-party exception, and a good-faith exception in cases just like this. So if there's any infirmity as to the residency violation, I would argue that that is harmless. And I'd also point out parenthetically, while not dispositive for resolution of the on the addendum supervised release violations, the second set of new crime violations of 18 U.S.C. 111, convicted on all three counts, including the aggravated variety, use of a car, deadly weapon, to assault, resist, impede, evade. So he was convicted on all three counts in August 15th, 2018, and his sentencing is set for November 19th, 2018. Your Honor's opinion in Lara is plainly not relevant to this case. That was a examined State probation, a typical warrant. I consent to the warrantless search having been convicted. And in that case, unlike this case, the probation officer came over pursuant to that clause, everything's fine so far, and grabbed the probationer's cell phone with absolutely no suspicion, probable cause, nothing, grabbed his cell phone, opened it, and started looking through it and found the gun, pictures of the gun that were subsequently used to convict, prosecute him again. So Lara is distinguishable. The supervised release conditions here, they're neither vague nor overbroad. They don't prohibit him from using the Internet or exercising his constitutional right to place advertisements, prohibits him from placing advertisements to solicit prostitutes in violation of Nevada State law. The supervised release condition that says, the association condition says you can't contact known criminals. When Lyman, his prostitute, had been arrested and he went down and contacted her, a reasonable person would understand that he couldn't do that, even if he had been convicted of anything. I don't believe she had been formal. So how is she a known criminal if she's never been convicted of anything? Well, setting to one side that the record evidence showed that he was using her as his prostitute, I believe knowing that, whether or not she's been formally convicted, that fact, knowing that he's using her as his prostitute and she's sitting there behind bars, the district court said, at the very least, the defendant can't be convicted. So in your view, the condition applies to associating with people who have never been convicted of anything, but the defendant knows or the probationer knows that the person that they're associating with is engaging in criminal activity? Yes, Your Honor. And at the very least, as the district court observed in imposing sentence, he should have gone to the probation officer and said, can I contact her? So the defendant, I understand he wants to chivalrously bail her out of jail, but that has to take a backseat to the Article III judge's imposition of a supervised release condition. He can't contact her. Would you turn to the return of property question? Yes, Your Honor. When the search warrant, which was validly authorized and executed, when it was executed, they found about $40,000 in cash, and the defendant wanted about $23,000 of it back. And he had a hearing before the magistrate judge. He argued the ---- Right. What's the burden once you get to this point? Who's got the burden of showing what? Well, at this point ---- This is after the proceedings, because he was actually arrested on a jewelry robbery, which, for some reason, fell apart. Yes. Okay. So isn't the presumption that he owns the property? It was taken from him. I don't believe that's the case, Your Honor. But the government has the burden. Yeah. Do you agree with that? In our Gladding case, we said that a defendant's Rule 41g motion should be presumptively be granted if the government no longer needs the property for evidence. You took it from him. The presumption is it's his property, and he gets it back at the end of the proceedings. Now, if you've got arguments as to why it's contraband or as to why it's forfeiture, then the government bears the burden of showing that. I didn't see that in the magistrate's ---- I saw this set out in the magistrate's framework. I didn't see that that in the R&R. I didn't see that that's how the magistrate actually applied it. The magistrate said he failed to satisfy his burden of showing that he obtained it legitimately. I don't know where that burden comes from. I believe the magistrate, and this may be my gloss, was looking at this in the proper context of this is an equitable ---- the return of property is, at bottom, an equitable consideration. And here we have a guy who was indicted for the robbery of numerous jewelry stores who has ---- Right. Did you prove that he robbed the jewelry stores? Pardon me? Did you prove that he robbed the jewelry stores? No, Your Honor. But surely the district court magistrate judge adjudicates ---- Okay. Counsel, let me ---- let me ---- I'm looking at page 2 of the magistrate's R&R, okay? So Magistrate Judge Fehrenbach says, correctly, quoting from cases, only a minimal showing, such as testimony from the owner of the property, will be required to shift the burden to the government. In the footnote, he only needs to demonstrate ownership before the burden shifts to the government. Now, if you look at this, if you've taken it from him, that is presumptive ownership, and that's what we said in Gladding. So the burden now shifts to you. You get to show that he didn't ---- that he didn't acquire it legitimately. But what the magistrate concluded was the right failed to demonstrate the money is rightfully his. Where did he acquire a burden to show that the money is rightfully his? I believe the ---- I don't know the direct answer to Your Honor's question. I would note that the magistrate, in looking at this, heard the defendant's ---- Oh, completely implausible testimony about going to the M and winning $2,000 or $3,000 a pop. It didn't add up to $23,000, even if you gave him the maximum money that he said he wanted at the dice table. It didn't add up. Got that. That might go to the government's burden.  He was rightfully his, and I can't find anything in any of our cases that suggests that an owner has to prove that the ---- that he is the rightful owner of something to which there has been any contest of ownership. I would, therefore, note, Your Honor, that, as I pointed out in the answering brief, I don't believe this issue is properly before this Court in the first instance. Why is that? Because he filed a notice of appeal, and it was rejected, and he never consolidated the motion-to-return property issue with the supervised release issues. So the government's answer is it's not properly before us. That ---- Right. And in the alternative, the answer I've previously been giving, that Your Honor has countered with ---- With facts and quotes from the record. I'll stipulate to that. Well, that's good, because that's what the record says. So thank you. Thank you. We have your argument in mind. Thank you, Your Honor. Your Honor, just briefly, there was mention of the third-party doctrine. Carpenter addresses that, that you cannot use a third-party doctrine because cell phone information and cell site information is far broader-reaching than the third-party doctrine. I just wanted to speak to plain error briefly. Without plain error, really, the cell phone tracking does not get before this Court. The search itself, cell phone tracking is not a condition. That's exactly the issue. We have an additional condition without notice. So I cannot attack it on overbreadth. There's no motion to suppress, no exclusionary rule in a supervised release setting versus an original prosecution where I could have a de novo, an ICER review before this Court. And there was a couple of additional issues. I didn't want to raise them without the government having a chance to respond, but just the greater violation. Right. If you didn't raise them and the government didn't respond, we'll leave them in their briefings. Okay. Thank you, Your Honor. And just certainly as the return of property, the burden is on the government to have a legitimate reason to retain it. And what about the defect in the notice of appeal? What's your response to that? Yes, Your Honor. So Mr. Wright filed his own pro se notice of appeal. And there is evidence in the record to show good cause why it was late. Did the government object to the late-filed notice? Not that I recall. It was rejected. Do they have to? I'm not aware of any standard that calls for that, Your Honor. And certainly he had good cause. He was moving to a different location. There was mail that was returned. This is the earliest he was able to file that notice of appeal, according to him, and he wrote as to that. And, you know, there was an order based on the reported recommendation from the district court. So it followed that process all the way through to be an appealable issue, in our opinion. Thank you. Thank you, Your Honor. Thank both counsel this morning for your argument, a very interesting case. Case just argued is submitted, and we're adjourned for the morning. Thank you.
judges: McKeown, W. Fletcher, Bybee